## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

**BIGG BURGER, INC.**, a Michigan
corporation,

       Plaintiff,

v.

**BIG BURGZS LLC**, a Michigan limited
liability company, and **BILLY OWENS**,

       Defendants.

Case No.:  2-19-cv-13413
Hon. Paul D. Borman
Magistrate Judge Anthony P. Patti

| HOWARD & HOWARD ATTORNEYS PLLC | WOOD HERRON & EVANS LLP |
|---|---|
| Michael F. Wais (P45482) | Laurence C. Begin (P55058) |
| Jonathan F. Karmo (P76768) | Of Counsel |
| Attorneys for Plaintiff | Attorney for Defendants |
| 450 W. Fourth Street | 2700 Carew Tower, 411 Vine Street |
| Royal Oak, MI  48067-2557 | Cincinnati, OH 45202-2917 |
| (248) 645-1483 | (513) 241-2324 |
| Fax:  (248) 645-1568 | Fax:  (513) 241-6234 |
| mwais@howardandhoward.com | lbegin@whe-law.com |
| jkarmo@howardandhoward.com | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO SET ASIDE DEFAULT UNDER RULE 55(c)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

MOST CONTROLLING AUTHORITIES .............................................................iv

STATEMENT OF QUESTIONS PRESENTED .................................................... v

I.  INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ......................................................................................... 1

III.  PROCEDURAL HISTORY ......................................................................... 4

IV.  LEGAL STANDARD .................................................................................. 6

     A.    Setting Aside the Clerk's Entry of Default ........................................ 6

     B.    Payment of Litigation Expenses to the Non-Defaulting Party........... 6

V.  ARGUMENT ............................................................................................. 8

     A.    Defendants Have Not Shown Good Cause for Setting Aside the
         Properly Entered Default .................................................................. 9

         1.  Defendants recklessly disregarded the effect of ignoring this
            lawsuit ..................................................................................... 9

         2.  Plaintiff will suffer prejudice absent a default judgment............. 13

         3.  Defendants do not have a meritorious defense ........................... 16

     B.    If the Defaults Are Set Aside, Plaintiff Should Be Awarded Its
         Litigation Fees and Costs ................................................................ 18

     CONCLUSION.......................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Bernal v. Rodriguez*,
  No. 16-00152, 2016 WL 4267942 (C.D. Cal. Aug. 09, 2016).............................7

*Dassault Systemes, SA v. Childress*,
  663 F.3d 832 (6th Cir. 2011) ..............................................................................6, 9

*DirectTV, LLC v. Alvarez*,
  No. 15-06827, 2017 WL 4284526 (N.D.J. Sept. 27, 2017) ...................................8

*Ellsberry v. City of Detroit*,
  No. 12-10934, 2012 BL 250412 (E.D. Mich. Sept. 25, 2012)........................7, 21

*First Fidelity Bank, N.A. v. Government of Antigua & Barbuda*,
  877 F.2d 186, 196 (2d Cir. 1989) ..........................................................................8

*Guyot v. Ramsey*,
  No. 14-13541, 2015 WL 871081 (E.D. Mich. Feb. 27, 2015) ................. 7, 20, 21

*INVST Fin. Grp. Inc. v. Chem-Nuclear Sys., Inc.*,
  815 F.2d 391 (6th Cir. 1987) ....................................................................... 16, 18

*J & J Sports Prods., Inc. v. Cloud Nine Hookah Lounge, Inc.*,
  No. 14-12238, 2014 WL 5800100 (E.D. Mich. Nov. 7, 2014).......................7, 21

*Nilsson Robbins, Dalgarn, Berlin, Carson & Wurst v. La. Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988) .................................................................... passim

*Philips Med. Sys. Int'l B.V. v. Bruetman*,
  8 F.3d 600 (7th Cir. 1993) ......................................................................................7

*PMJ Capital Corp. v. Bauco*,
  No. 16-6242, 2018 WL 485973 (S.D.N.Y. Jan. 17, 2018) ....................................8

*Powerserve Int'l, Inc. v. Lavi*,
  239 F.3d 508, 515 (2d Cir. 2001) ............................................................. 6, 7, 18

*S. Elec. Health Fund v. Bedrock Servs.*,
  146 F. App'x 772 (6th Cir. 2005)........................................................................10

*Shepard Claims Serv., Inc. v. William Darrah & Assocs.*,
   796 F.2d 190 (6th Cir. 1986) ...............................................................................7, 9

*Thompson v. Am. Home Assurance Co.*,
   95 F.3d 429 (6th Cir. 1996) ...................................................................................14

*Thorpe v. Thorpe*,
   364 F.2d 692 (D.C. Cir. 1996) ................................................................................7

*Tumblebus Inc. v. Cranmer*,
   399 F.3d 754 (6th Cir. 2005) .................................................................................18

*United States v. Goist*,
   37 F. App'x 517 (6th Cir. 2010)...........................................................................14

*Williams v. Meyer*,
   346 F.3d 607 (6th Cir. 2003) ................................................................................16

*Winslow v. Kalamazoo Pub. Schs.*,
   No. 07-00065, 2007 WL 1701796 (W.D. Mich. June 11, 2007) ...........................7

*Winslow*, 2007 WL 1701796.....................................................................................21

## OTHER AUTHORITIES

10A Charles A. Wright, Authur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2700 (1998)..................................................................................6, 18

## RULES

E.D. Mich. L.R. 5.1(a)(3)...........................................................................................6

Fed. R. Civ. P. 55(c).......................................................................................... 6, 8, 9

# **MOST CONTROLLING AUTHORITIES**

**Cases**

*Dassault Systemes, SA v. Childress*, 663 F.3d 832 (6th Cir. 2011)

*Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190 (6th Cir. 1986)

*J & J Sports Prods., Inc. v. Cloud Nine Hookah Lounge, Inc.*, No. 14-12238, 2014 WL 5800100 (E.D. Mich. Nov. 7, 2014)

*Guyot v. Ramsey*, No. 14-13541, 2015 WL 871081 (E.D. Mich. Feb. 27, 2015)

*Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508 (2d Cir. 2001)

*Nilsson Robbins, Dalgarn, Berlin, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538 (9th Cir. 1988)

**Other Authorities**

Fed. R. Civ. P. 55(c)

10A Charles A. Wright, Authur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2700 (1998)

## **STATEMENT OF QUESTIONS PRESENTED**

I.     Have Defendants shown good cause for setting aside the properly entered default?

Plaintiff Answers:          No.


II.    If this Court decides to set aside the default, should it be conditioned upon payment of Plaintiff's litigation expenses?

Plaintiff Answers:          Yes.

## I.     INTRODUCTION

Defendants' Motion to Set Aside the Default lacks merit.  Defendants have not established the requisite good cause to set aside the properly entered default and to avoid a default judgment.  The motion should be denied for this reason alone.

Nevertheless, if this Court decides to set aside the properly entered default, Plaintiff should be made whole for the significant legal expenses incurred as a result of Defendants' actions that led to the default.  Courts regularly condition setting aside a default on the payment of legal fees and costs.

For these reasons, Plaintiff requests that this Court deny Defendants motion in its entirety and enter a default judgment.  Alternatively, Plaintiff requests that this Court condition setting aside the default upon payment of Plaintiff's litigation fees and costs, which have been wrongfully incurred as a result of Defendants' delinquencies.

## II.    BACKGROUND

Plaintiff is the owner of U.S. Trademark Registration No. 3,957,515[1] for Class 43, restaurant services, which constitutes the word mark "BIGG BURGER" and the logo depicted below:

---

[1] The Complaint inadvertently references U.S. Trademark Registration No. 3,924,358, which is Plaintiff's second trademark for the word "BIGG BURGER."  It is undisputed from the public record that Plaintiff is the owner of both marks.  *See* ECF No. 24-1 (USPTO details for both trademarks).  And, based on Plaintiff's allegations in the Complaint, including pictures of its word and logo



*See* ECF No. 1 at PageID.1.  Plaintiff's mark was registered on May 10, 2011, and it has been in consecutive use for over 5 years, reaching incontestable status. *Id.* at PageID.2.

Plaintiff owns and operates a restaurant in Livonia, Michigan, and has been using its trademark in the operation of its business since at least February 2011. *Id.* Plaintiff advertises its services in Michigan, including through the following Internet advertising:



---

mark and the date of registration, reference to U.S. Trademark Registration No. 3,924,358 was clearly an inadvertent typographical error that should have been referenced to U.S. Trademark Registration No. 3,957,515.

*Id.* at PageID.6.

Defendant, Big Burgzs LLC, operates a confusingly similar restaurant as Plaintiff, located in Detroit, Michigan, owned and operated by Defendant Owens individually. *Id.* at PageID.6–7.  Defendants' use of the name "Big Burgz" is confusingly similar to Plaintiff's name and trademark.  And, to make matters worse, Defendants advertise and promote their restaurant using a confusingly similar look and feel, with the same color scheme, general layout, photographs, and menu items. *Id.* at PageID.7.  For example, below is a screenshot showing Defendant's Internet advertising, which is strikingly similar to Plaintiff's advertising and layout:



*Id.* at PageID.7.

Defendants' use of its confusingly similar marks has led to actual confusion. In 2019, a customer who visited Plaintiff's Livonia restaurant complained about Plaintiff's "Detroit location" having lower quality food and service than its Livonia location. *Id.*  However, the customer was referring to Defendant's restaurant in Detroit.  Plaintiff does not have and never has had a Detroit location. *Id.*

### III.   PROCEDURAL HISTORY

Plaintiff, through counsel, sent an initial demand letter to Defendants on August 29, 2019, before filing the Complaint. *See* ECF No. 1-3, PageID.27–34.  On September 17, 2019, Defendants' ***counsel*** responded to the demand letter as follows:

> Dear Mr. Wais:
>
> Relative to the above-captioned matter, and with regard to your letter to Mr. Owens, I have been contacted by Mr. Billy Owens.  We are reviewing the matter and will contact you after we have had an opportunity to review the same.
>
> Regards,
>
> Laurence C. Begin, Esq.
> P55058

*See* **Ex. A**.  After Defendants' counsel ignored the demand for almost one month, on October 10, 2019, Plaintiff's counsel stated, "[w]e would like to avoid litigation but we need to hear from you by Monday so we can move this matter forward." **Ex. B.** Plaintiff subsequently waited over one-month, without receiving any response from Defendants' counsel, before filing this action in November. *See* ECF No. 1.

Plaintiff subsequently attempted to serve a copy of the Summons and Complaint on the Defendants, but they evaded service. *See* ECF No. 7.  Efforts were

made on three separate occasions to serve Defendants with the Summons and Complaint; and, despite the process server believing that he saw Defendant Owens on a restaurant camera, restaurant employees told the process server that Defendant Owens was not present. *See* ECF No. 8, at PageID.53. Accordingly, Plaintiff was forced to file a motion for alternate service, which this Court granted. *See* ECF Nos. 7, 10. And, on January 8, 2020, Plaintiff served the Summons and Complaint ***both*** by leaving a copy at the Defendant restaurant and via certified mail. *See* ECF Nos. 11–14. On February 11, 2020, almost 2 weeks ***after*** Defendants' responsive pleading was due, Plaintiff filed its Request for Clerk's Entry of Default, which led to the defaults currently in place against Defendants. ECF No. 15, 16–17.

Thereafter, on March 2, 2020, Plaintiff filed a motion with this Court seeking entry of a default judgment, which remains pending. *See* ECF No. 18. Finally, 76 days after being served, Defendants responded by filing a response brief to Plaintiff's motion for default judgment, and a motion to dismiss. *See* ECF Nos. 23, 24. However, Defendants' responsive filings were stricken by this Court because they were flagrantly violative of the Court's Local Rules. ECF No. 28. In its Order, the Court allowed Defendants to file a motion to set aside the default, and cautioned Defendants that "all further filing in this action must comply ***in all respects*** with the

Local Rules." ECF. No. 28, at PageID.442.  On May 6, 2020, Plaintiff filed its motion to set aside the default. ECF No. 30.[2]

## IV.   LEGAL STANDARDS

### A.   Setting Aside the Clerk's Entry of Defaulta

Where a default has entered, it may be set aside only upon a showing of good cause. *See* Fed. R. Civ. P. 55(c).  In determining whether good cause exists to set aside a default, district courts consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838 (6th Cir. 2011).

### B.   Payment of Litigation Expenses to the Non-Defaulting Party

Multiple courts have required a defaulting party to pay the litigation fees and costs of the opposing party contingent on setting aside a properly entered default.  It As these courts have explained, "[t]he imposition of conditions as part of granting a Rule 55(c) motion" could be viewed as rectifying the "prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation."  *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) (quoting 10A Charles A. Wright, Authur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2700, at 170–171 (1998)); *see Nilsson Robbins, Dalgarn, Berlin,*

---

[2] Despite this Court's warning, Plaintiff **again** violated this Court's Local Rules, which require all footnotes be in proportional 14-point font. L.R. 5.1(a)(3).

*Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988); *Bernal v. Rodriguez*, No. 16-00152, 2016 WL 4267942, at \*5 (C.D. Cal. Aug. 09, 2016). When setting aside a default, "the most common type of prejudice is the additional expense caused by the delay." *Nilsson*, 854 F.2d at 1546. "Courts have eased th[is] burden[] by requiring the defaulting party to provide a bond to pay costs." *Id.* "The use of imposing conditions can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences." *Id.*

Courts in this district previously endorsed conditioning the vacatur of a default on the payment of attorney fees—and recognized that such a condition is proper under the federal rules. *J & J Sports Prods., Inc. v. Cloud Nine Hookah Lounge, Inc.*, No. 14-12238, 2014 WL 5800100, at \*4 (E.D. Mich. Nov. 7, 2014) (**Exhibit E**) (citing *Winslow v. Kalamazoo Pub. Schs.*, No. 07-00065, 2007 WL 1701796, at \*3 (W.D. Mich. June 11, 2007) (**Exhibit F**)); *Guyot v. Ramsey*, No. 14-13541, 2015 WL 871081, at \*4 (E.D. Mich. Feb. 27, 2015) (**Exhibit G**) (citing *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th Cir. 1986)); *Ellsberry v. City of Detroit*, No. 12-10934, 2012 BL 250412, at \*1 (E.D. Mich. Sept. 25, 2012) (**Exhibit H**). A number of circuits agree with this approach and have also approved imposing such conditions. *See, e.g.*, *Powerserve*, 239 F.3d at 515; *Nilsson*, 854 F.2d at 1546; *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 602–604 (7th Cir. 1993); *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1996); *First Fidelity*

*Bank, N.A. v. Government of Antigua & Barbuda*, 877 F.2d 186, 196 (2d Cir. 1989); *see also DirectTV, LLC v. Alvarez*, No. 15-06827, 2017 WL 4284526 (N.D.J. Sept. 27, 2017); *PMJ Capital Corp. v. Bauco*, No. 16-6242, 2018 WL 485973 (S.D.N.Y. Jan. 17, 2018). Put simply, "it is appropriate to condition setting aside a default upon the payment of a sanction." *Nilsson*, 854 F.2d at 1546–1547.

## V.    ARGUMENT

Where a default has entered, it may be set aside only upon a showing of good cause. *See* Fed. R. Civ. P. 55(c).  Here, Defendants have not shown good cause; and, therefore, this Court should deny Defendants' motion for three reasons.

First, Defendants' conduct that was sufficiently culpable to warrant default. Second, setting aside the default would prejudice Plaintiff.  Third, Defendants do not have a meritorious defense.  Accordingly, this Court should deny Defendants' Motion to Set Aside the Default.

Alternatively, if this Court is inclined to set aside the default, Plaintiff requests that such an order be conditioned upon payment of Plaintiff's attorney fees and costs. As stated above, many courts—including courts in this district—have found it equitable to condition setting aside a properly entered default on the payment of attorney fees and costs to the non-defaulting party.  This is because an assessment of fees and costs would remedy some of the prejudice suffered by Plaintiff and would be an appropriate sanction for Defendants' wrongful conduct.  Thus, to the extent

the Court is inclined to grant Defendants' motion to set aside the default, which Plaintiff does not believe should occur, Plaintiff requests that any decision to set aside the default be conditioned upon Defendants paying Plaintiff its wrongfully incurred attorney fees and costs—which have been incurred as a direct result of Defendants' delinquencies.

## A. Defendants Have Not Shown Good Cause for Setting Aside the Properly Entered Default

Where a default has entered, it may be set aside only upon a showing of good cause. *See* Fed. R. Civ. P. 55(c). In determining whether good cause exists to set aside a default, district courts consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838 (6th Cir. 2011). Here, Defendants have not satisfied the good cause standard to set aside the default.

### 1. Defendants recklessly disregarded the effect of ignoring this lawsuit

A defendant's conduct leading to a default is willful if the defendant "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *See Dassault Systemes*, 663 F.3d at 841 (citing *Shephard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)). Where a party ignores legal documents, that conduct is viewed

9

as a reckless disregard for the effect of the party's conduct on the proceedings. *S. Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005).

Here, Defendants were represented by counsel since many **months** before this lawsuit was filed. Despite this, Defendants deliberately ignored these proceedings and evaded service. Now, Defendants seek relief from their own wrongful conduct.

As stated above, Plaintiff, through counsel, sent an initial demand letter to Defendants on August 29, 2019, before filing the Complaint. *See* ECF No. 1-3, PageID.27–34. On September 17, 2019, Defendants' **counsel** responded to the demand letter, stating "[w]e are reviewing the matter and will contact you after we have had an opportunity to review the same." **Ex. A**. After receiving no response for almost one month, on October 10, 2019, Plaintiff's counsel stated, "[w]e would like to avoid litigation but we need to hear from you by Monday so we can move this matter forward." **Ex. B**. Plaintiff subsequently waited over one-month, without receiving any response from Defendants' counsel, before filing this action in November. *See* ECF No. 1.

Subsequently, Plaintiff diligently attempted to serve a copy of the Summons and Complaint on the Defendants, but they evaded service. *See* ECF No. 7. Efforts were made on three separate occasions to serve Defendants with the Summons and Complaint; and, despite the process server believing that he saw Defendant Owens on a restaurant camera, restaurant employees told the process server that Defendant

10

Owens was not present. *See* ECF No. 8, at PageID.53. Accordingly, Plaintiff was forced to file a motion for alternate service [ECF No. 7], which this Court granted. *See* ECF No. 10. And, on January 8, 2020, Plaintiff served the Summons and Complaint **both** by leaving a copy at the Defendant restaurant and via certified mail. *See* ECF Nos. 11–14. On February 11, 2020, almost 2 weeks **after** Defendants' responsive pleading was due, Plaintiff filed its Request for Clerk's Entry of Default, which led to the defaults currently in place against Defendants. ECF No. 15, 16–17.

Defendants, relying on the Declaration of Defendant Owens, argue that Defendant Owens "had no information or indication that the complaint had been filed." ECF No. 30 at PageID.435. Defendants also contend that "the complaint sat in the mail pile for at least two weeks before [Defendant Owens] realized that the document existed." *Id.* Defendants contend that "Mr. Owens had every intention of responding to the complaint" but that "the stress of running his business as its sole owner and raising five children . . . delayed his ability to find and retain counsel so that he could meaningfully respond to the complaint." *Id.* at PageID.435–436.

Defendant Owens' declarations under oath are demonstrably false, further confirming Defendants' reckless disregard of their conduct on these proceedings. To begin, while Defendant Owens claims he was "unaware" that Plaintiff's Complaint had been filed because it "sat in the pile of mail," his assertion is belied by the evidence. As explained, Defendant Owens had already retained counsel as of

11

September 17, 2019, in response to Plaintiff's demand letter threatening this lawsuit. By that time, Defendant Owens knew that this lawsuit was imminent, as Defendants and their counsel chose to ignore the demand letter for over two months.  Then, as explained, Defendant Owens intentionally evaded service of the Summons and Complaint by refusing to accept it from the process server despite being present at the restaurant.  Defendants knew about the Complaint and chose to ignore it.

Moreover, even crediting Defendant Owens' demonstrably false Declaration, alternate service was executed on January 8, 2020.  Accordingly, even under Defendants' version of events, Defendants knew of the Complaint by January 22, 2020.  Defendants could—and should—have responded to the Complaint well-before Plaintiff moved for a Clerk's Entry of Default almost two weeks *after* the responsive pleading deadline, on February 11, 2020. *See* ECF No. 15.

Similarly, while Defendants now claim that the Summons and Complaint "sat in the pile of mail" for at least two weeks, that does not explain why it took until March 24, 2020—a period of over 2 months from the time the Summons and Complaint were served and over one month after the defaults were entered and served on Defendants—to file a pleading in this case for the first time.  Indeed, as explained, even under Defendants' version of events, not only would Defendants have had an opportunity to file a timely responsive pleading *before* the defaults entered, they certainly had an opportunity to file *something* with the Court in the

almost two-week timeframe that Plaintiff waited to secure the defaults. And, in any event, Defendants have no explanation as to why it took them until March 24, 2020 to take any action when they were served with the defaults *over one month earlier*. Defendants' conduct acts against setting aside the properly entered defaults.[3]

In any event, inexplicitly failing to open mail or respond to a lawsuit for over two months constitutes culpable conduct.[4] The excuse of needing to "retain counsel and determine how [Defendants] would pay for it" [ECF No. 30, at PageID.436] is such a generalized excuse that it could be used in virtually every lawsuit as an excuse for avoiding a default judgment. If this reason constitutes "good cause," the standard to set aside a default is rendered meaningless—and is essentially no standard at all.

### 2.    Plaintiff will suffer prejudice absent a default judgment

Setting aside a default results in prejudice to a plaintiff where it "result[s] in tangible harm such as loss of evidence, increased difficulties of discovery, or greater

---

[3] To be clear, Defendant Owens' assertion that, once he finally allegedly learned that the Complaint was "sitting in his pile of mail," he needed time to find and retain counsel, is demonstrably false. As explained, Defendants' counsel—Mr. Begin— had already reached out to Plaintiff's counsel in response to the demand letter, in September 2019, two months *before* the Complaint was even filed. He is the *same* counsel who has now filed an appearance and a *late* response to this Motion.

[4] Defendants contend they called Plaintiff's counsel on the date the Motion for Default Judgment was filed. However, Defendants fail to explain that, the *sole* request made was for an extension of time to file a responsive pleading, even though the Clerk had already entered defaults. In addition, Plaintiff's counsel already incurred the substantial costs of drafting a motion for default judgment, which was filed within minutes of the phone call.

opportunity for fraud or collusion." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996). Here, each day that Defendants operate infringing Plaintiff's trademark leads to a loss of goodwill. By intentionally failing to timely respond to the Complaint, Defendants have continued unfairly competing with Plaintiff using Plaintiff's registered trademark, causing a loss of goodwill.

Moreover, prejudice results where the plaintiff would be forced to respond to additional frivolous pleadings if the default is set aside. *See United States v. Goist*, 37 F. App'x 517, 519 (6th Cir. 2010) ("The government would have been prejudiced by a set aside of the default because it would have been subject to additional frivolous filings."). Here, as explained above, Plaintiff has already been forced to file a motion for alternate service after Defendant Owens intentionally dodged service, in addition to having to respond to Defendant Owens' demonstrably false Declaration made under oath. Plaintiff was also required to respond to procedurally violative motions that were ultimately stricken by this Court—amounting to a total waste of time and resources. And, Defendants stricken motion to dismiss was filed without regard to the standards for motions to dismiss—failure to state a claim on the pleadings alone. Indeed, Defendants' motion to dismiss attached documents outside the pleadings and exclusively argued why those documents purportedly require dismissal of Plaintiff's claims. *See generally,* ECF No. 24. Defendants' actions to date confirm that Plaintiff will be forced to respond to frivolous pleadings.

Furthermore, "the most common type of prejudice is the additional expense caused by the delay." *Nilsson*, 854 F.2d at 1546. Here, Plaintiff has had to **draft seven documents** (including this one) and has had to **file six documents** relating to Defendants' misconduct. *See* ECF Nos. 7, 8, 11, 12, 13, 14, 15, 18, 19, 20, 25, 26. Each one of these **thirteen** documents have had related costs and attorney fees. To date, this case has not advanced towards trial since the filing of the Complaint—and, already, Plaintiff has incurred over **$13,000** in attorney fees and litigation costs since Defendants' default. **Ex. C**. Thus, Defendants' repeated misconduct and pattern of delinquency has caused Plaintiff *significant*, unanticipated attorney fees and costs. Accordingly, setting aside the default will prejudice Plaintiff because it would nullify the significant resources that Plaintiff has exhausted as a result of Defendants' delay.

Defendants opportunistically reference the COVID-19 pandemic as a reason why there allegedly has not been any prejudice to Plaintiff. However, Defendants' actions that led to the properly entered defaults, in addition to the actions described above that resulted in unnecessarily responding to now-stricken pleadings, have nothing to do with the COVID-19 pandemic. Indeed, Defendants intentionally ignored this lawsuit long before the COVID-19 pandemic caused any shut downs.

### 3.    Defendants do not have a meritorious defense

A meritorious defense is one that is "good at law." *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003).  In other words, a meritorious defense requires consideration of "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."  *INVST Fin. Grp. Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987).  Here, in the argument section of their brief, Defendants simply contend that they allegedly were not aware that the Complaint had been filed, and, as such, they inadvertently overlooked it.  *See* ECF No. 30 at PageID.440–441.  However, this has nothing to do with a ***meritorious defense*** to the Complaint.  Defendants have not established any such meritorious defense.  Indeed, the *sole* argument Defendants make relates to what Defendants now know is simply a typographical error in the complaint referring to the *correct* trademark but by an incorrect trademark number.

Here, Defendants almost exclusively focus on the fact that one of Plaintiff's two registered marks resides on the supplemental, as opposed to primary, trademark register.  While it is true that Plaintiff committed a typographical error in citing to its mark, *see, infra*, at n. 1, this does not impact the validity of Plaintiff's claims.[5]

---

[5] In prior briefs to this Court, Plaintiff clarified the typographical mistake in its Complaint.  Ironically—and disrespectfully—Defendants cite to this mistake and accuse Plaintiff of "a lack of candor before this Court." ECF 30 PageID.443.  But Plaintiff has been forthcoming in admitting this typographical error. In contrast, Defendants have displayed no respect for Court rules or filing deadlines.

Indeed, to establish a *prima facie* case for trademark infringement, Plaintiff need only allege facts that it has a federally registered trademark (not facts that establish the trademark is on the primary as opposed to secondary trademark register).[6] Defendants' argument does nothing to undermine the allegations in the Complaint that establish Plaintiff has a federally registered trademark.   On the contrary, Defendants' own documents confirm Plaintiff has federally registered trademarks, and that its word/logo mark is on the ***primary*** trademark register. *See* ECF No. 24-1.  So, if anything, Defendants' arguments strengthen Plaintiff's *prima facie* case for trademark infringement.  Defendants' arguments regarding the strength of the marks is wholly inappropriate at this stage of the litigation; and cannot be considered.

Defendants also reference an issue preclusion argument.  Defendants argue that because Plaintiff purportedly disclaimed the right to enforce its mark against the word "Big Burger" standing alone, it has somehow waived its rights to make ***any*** trademark claims against Defendants (or anyone else for that matter).  As an initial matter, Plaintiff's disclaimer is inapplicable.  Plaintiff primarily seeks enforcement of its stylized mark, which is shored up by the existence of its word mark.

Further, Defendants fail to address Plaintiff's unfair competition claim and Plaintiff's state law claim (Counts II and III).  As stated above, Defendants solely

---

[6] It is undisputed, in any event, that Plaintiff's word and logo mark is on the ***primary*** trademark register, not the secondary register. *See* ECF No. 24-1.

focus on registration nuances relating to Plaintiff's trademarks.  Defendants fail to recognize that "Section 43(a) of the Lanham Act creates a 'federal cause of action for infringement of marks and trade dress that have not obtained federal registration.'" *Id.* (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760–761 (6th Cir. 2005).  So, even if this Court decides to set aside the default relating to Plaintiff's trademark infringement claim, Defendants have given this Court no reasons for why a default should not be entered as to Plaintiff's unfair competition and state law claims.

Put simply, Defendants have not provided any justification for their requested relief.  Defendants do not have good cause for setting aside the properly entered default.  The motion should be denied in its entirety.

### B.   If the Defaults Are Set Aside, Plaintiff Should Be Awarded Its Litigation Fees and Costs

As stated above, "[t]he imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation." *Powerserve Int'l*, 239 F.3d at 515 (citing Wright, Miller & Kane, *supra*, at 170–171).  When setting aside a default, "the most common type of prejudice is the additional expense caused by the delay." *Nilsson*, 854 F.2d at 1546.  Imposing a condition of attorney

fees and costs "can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences." *Id.*

Here, as stated above, Plaintiff has incurred *significant* litigation expenses as a result of Defendants' inexcusable delay.  At the outset, Defendants were intentionally evading service, which increased litigation costs and resulted in motion practice by Plaintiff seeking alternative service. *See* ECF Nos. 7, 8.

Subsequently, Defendants failed to timely respond to Plaintiff's complaint—despite admittedly knowing about the lawsuit prior to the entry of default. Consequently, Plaintiff wrongfully incurred costs and attorney fees relating to the entry of default. *See* ECF Nos. 15, 18.

Thereafter, Defendant filed a slew of procedurally violative pleadings, to which Plaintiff had to respond—resulting in even more fees and costs. *See* ECF Nos. 25, 26.  Indeed, Defendants filed a motion to dismiss, a response to Plaintiff's motion for default judgment, and a reply brief. ECF Nos. 23, 24, 27.  All these pleadings had to be reviewed, and appropriately responded to by Plaintiff. *See* (ECF Nos. 25, 26); *see also* **Ex. C**.  Further, these pleadings were reviewed by the Court, and after being deemed improper, this Court entered an Order striking all three of Defendants' improper motions. (ECF No. 28).  Accordingly, Defendants' procedurally violative practices wasted Plaintiff's time and resources—as well as this Court's time and resources.  Under such circumstances, an assessment of attorney fees and costs

against Defendants would be just and an appropriate remedy for Defendants' repeatedly violative conduct.

As stated above, courts in this district have recognized that conditioning a vacatur of default on attorney fees is typically a just remedy when a defendant has exhibited wrongful conduct. For example, in *Guyot v. Ramsey*, the court found it "inexcusable" that Defendants had not timely responded to the complaint—despite being on notice of the action. *Guyot*, 2015 WL 871081, at *4. After determining that it was proper to set aside the default, the court stated that it "will not ignore the careless conduct exhibited by Defendants in this case." *Id.* at *5. Because "[t]he Defendants conduct [] resulted in considerable delay, wasting both the Court's and Plaintiff's time and resources," the court conditioned the vacatur of default on the payment of attorney fees and costs. *Id.*

Here, like in *Guyot*, Defendants knew about the Complaint and carelessly allowed the entry of default. As explained above, alternate service was executed on January 8, 2020. And, even under Defendants' version of events, Defendants knew of the Complaint by January 22, 2020. Defendants should have responded to the Complaint well-before Plaintiff moved for a Clerk's Entry of Default almost two weeks ***after*** the responsive pleading deadline, on February 11, 2020. *See* ECF No. 15. Because Defendants' conduct resulted in considerable delay, wasting both the

Court's and Plaintiff's time and resources, this Court should condition the vacatur of default on the payment of attorney fees and costs. *See Id.*

Similarly, in *Ellsberry v. City of Detroit*, the court conditioned the vacatur of a default on the payment of attorney fees and costs because of the defaulting party's "failure to take affirmative steps to obtain representation." *Ellsberry*, 2012 BL 250412, at *1. Here, Defendants' identical excuse of failing to take affirmative steps to obtain representation (even though such representation is demonstrably false) should be met with an assessment of wrongfully incurred attorney fees paid to Plaintiff. *See Id.*

Notably, courts have found it appropriate to award a portion of a non-defaulting party's attorney fees and costs even where there is little evidence of wrongful conduct on behalf of the defaulted party. For example, in *J & J Sports v. Cloud Nine Hookah Lounge*, the defendant was defaulted because he was temporarily abroad and unable to accept service. *J & J Sports*, 2014 WL 5800100, at *1. Accordingly, the court found it proper to set aside the default. *Id.* at *4. However, in doing so, the court found that "Plaintiff's counsel should be compensated for some of the time spent in responding to Defendants' motion." *Id.* Thus, the court conditioned setting aside the default on payment of some of the plaintiff's attorney fees. *Id.* (citing *Winslow*, 2007 WL 1701796, at *3).

21

Here, Defendants' conduct was clearly wrongful, violative, and caused Plaintiff to incur unnecessary legal expenses.  However, assuming *arguendo* that this Court decided that Defendants' conduct was not wrongful, an assessment of attorney fees would nevertheless be proper as a condition to setting aside the default.  Like the plaintiff in *J & J Sports*, here, Plaintiff should be made whole for having to exhaustively litigate issues relating to Defendants' delay.  As stated above, Plaintiff has incurred over ***$13,000*** in attorney fees and costs since Defendants' default. *See* **Ex. C**.  These significant expenses have been wrongfully incurred as this case has not even progressed passed the filing of Plaintiff's Complaint—due to Defendants' misconduct.

Indeed, Defendants' delay and carelessness have caused Plaintiff to incur ***significant*** legal expenses.  It is unfair that Plaintiff should be burdened by such expenses simply because Defendants have acted recklessly and carelessly.  Accordingly, it would be just and proper for this Court to condition setting aside the default on payment of Plaintiff's attorney fees—or, at the very least, some portion thereof.  Imposing a condition of attorney fees and costs would certainly "serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences." *Nilsson*, 854 F.2d at 1546.

## **CONCLUSION**

For the reasons state above, Plaintiff respectfully requests this Honorable Court deny Defendants' motion to set aside the default in its entirety.

Alternatively, Plaintiff requests that this Court condition setting aside the default on payment of Plaintiff's wrongfully incurred attorney fees and litigation costs, which have amassed to over $13,000 due to Defendants' repeated delinquencies.

<div style="margin-left: 40%;">

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC


By: ___*/s/Michael F. Wais*_____

    Michael F. Wais (P45482)
    Jonathan F. Karmo (P76768)
450 West Fourth Street
Royal Oak, Michigan 48067-2557
Phone: (248) 645-1483 | Fax: (248) 723-1568
Email: MWais@HowardandHoward.com
    JKarmo@HowardandHoward.com

</div>

Dated: May 14, 2020

## __PROOF OF SERVICE__

The undersigned certifies that the foregoing
instrument was served upon all participants in the
above cause, to each at their respective addresses
on May 14, 2020

By:  ☐ U.S. Mail          ☐ E-Mail
        ☐ Hand Delivered      ☐ Overnight Courier
        ☐ UPS                 ☑ ECF Filing System

I declare that the statements above are true to the
best of my information, knowledge, and belief.


By:  _____ */s/Michelle M. Sterling*____
                Michelle M. Sterling

4852-7442-1948,