UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG BURGER, INC.,

                    Plaintiff,                          Case No. 19-cv-13413

v.                                                      Paul D. Borman
                                                        United States District Judge
BIG BURGZ, LLC, and
BILLY OWENS,

                    Defendants.
_____/

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANTS' MOTION TO SET ASIDE DEFAULT**
**UNDER FED. R. CIV. P. 55(C) (ECF NO. 30);**
**(2) SETTING ASIDE THE CLERK'S ENTRIES OF DEFAULT**
**(ECF NOS. 16, 17) CONDITIONED ON DEFENDANTS' PAYMENT OF**
**$6,000.00 IN FEES AND COSTS; AND**
**(3) DENYING AS MOOT PLAINTIFF'S MOTION FOR DEFAULT**
**JUDGMENT AND PERMANENT INJUNCTION (ECF NO. 18)**

        This matter is before the Court on Defendants Big Burgz, LLC's and Billy

Owens' Motion to Set Aside Default Under Rule 55(c) (ECF No. 30), and Plaintiff

Big Burger, Inc.'s Motion for Default Judgment and Permanent Injunction (ECF No.

18). The motions have been fully briefed. The Court does not believe that oral

argument will aid in its disposition of the motions; therefore, it is dispensing with

oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the

reasons stated below, the Court GRANTS Defendants' Motion to Set Aside Default

Under Rule 55(c), conditioned on Defendants' payment of $6,000.00 in fees and costs to Plaintiff, and DENIES AS MOOT Plaintiff's Motion for Default Judgment and Permanent Injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff Bigg Burger, Inc. is the owner of U.S. Trademark Registration No. 3,957,515[1] for Class 43, restaurant services, which constitutes the word mark "BIGG BURGER" and the logo depicted below:



(ECF No. 1, Complaint, ¶ 1, PgID 1.) Plaintiff alleges that its mark was registered on May 10, 2011, and it has been in consecutive use for over five years, reaching incontestable status. (*Id.* ¶ 2, PgID 2.) Plaintiff owns and operates a restaurant in

---

[1] Plaintiff's Complaint refers to Registration No. 3,924,538. (Compl., ¶ 1.) Plaintiff explains in its response to Defendants' Motion to Set Aside Default that the Complaint (and Plaintiff's Motion for Default Judgment) inadvertently reference U.S. Trademark Registration No. 3,924,358, which is Plaintiff's second trademark for the word "BIGG BURGER." Plaintiff owns both marks and contends that the reference to No. 3,924,358 was "clearly an inadvertent typographical error" and the correct mark is U.S. Trademark Registration No. 3,957,515.

2

Livonia, Michigan, and has been using its trademark in the operation of its business since at least February 2011. (*Id.* ¶ 3, PgID 2.)

Defendant Big Burgz LLC operates a restaurant in Detroit, Michigan, owned and operated by Defendant Billy Owens, since January 2011. (Complaint, ¶¶ 7-8, PgID 2-3; ECF No. 30-5, Declaration of Billy Owens ("Owens Decl.") ¶ 3, PgID 519.) Defendant Owens asserts that during the nine years Big Burgz has operated, he has expended "substantial time, money, emotional energy, and other investment in developing the good name of [his] business, BIG BURGZ, all without any hint or assertion that the name was alleged in any way to infringe on another's trademark." (Owens Decl. ¶ 5, PgID 519.)

Plaintiff contends that Defendants' restaurant offers the same type of food as Plaintiff's restaurant, and that Defendants' use of the name "Big Burgz" is confusingly similar to Plaintiff's name and mark, and that Defendants advertise and promote their restaurant using a confusingly similar look and feel, with the same color scheme, general layout, photographs, and menu items. (Complaint ¶¶ 21-25, PgID 6-7.) Plaintiff further alleges that Defendants' use of similar marks has led to actual confusion, and that in 2019, a customer who visited Plaintiff's Livonia restaurant complained about Plaintiff's "Detroit location" having lower quality food

and service than its Livonia location. (*Id.* ¶¶ 26-27, PgID 7.) Plaintiff states that the customer was referring to Defendants' restaurant, not Plaintiff's. (*Id.* ¶ 27, PgID 7.)

On August 29, 2019, Plaintiff, through counsel, sent an initial demand letter to Defendants to cease and desist from using Plaintiff's registered mark, and giving Defendants five days to comply with the demands in the letter. (ECF No. 1-3, PgID 27-34.)

On September 17, 2019, Defendants' counsel responded to the demand letter by email as follows:

> Dr. Mr. Wais:
>
> Relative to the above-captioned matter, and with regard to your letter to Mr. Owens, I have been contacted by Mr. Billy Owens. We are reviewing the matter and will contact you after we have had an opportunity to review the same.
>
> Regards,
> Laurence C. Begin, Esq.
> P55058

(ECF No. 31-2, Begin 9/17/19 Email, PgID 553.) This email clearly indicates to the Court that Mr. Begin has agreed to review the matter with Mr. Owens and that he is representing Mr. Owens as of September 17, 2019. This was not simply a "courtesy letter" from Mr. Begin to Mr. Wais on behalf of Defendants. Mr. Wais responded to Mr. Begin's email the next day, on September 18, 2019, stating "Thank you for the

e-mail – we look forward to hearing from you." (ECF No. 31-3, Wais 9/18/19 Email, PgID 555.)

After receiving no further response, on October 10, 2019, Plaintiff's counsel wrote to Mr. Begin again, stating: "We have not heard back from you regarding this matter. Please advise. We would like to avoid litigation but we need to hear from you by Monday so we can move this matter forward." (ECF No. 31-3, Michelle M. Sterling 10/10/19 Email, PgID 555.) According to Defendants, Mr. Begin did not receive this October 10, 2019 email "as he was not maintaining or reviewing that informal email address [larrybegin@aim.com] on a regular basis." (ECF No. 32, Defendants' Reply, at p. 1, PgID 589.) The Court does not accept this deficient attempt at an excuse.

## B.    Procedural Background

Receiving no response to the email, Plaintiff next filed his Complaint in this matter on November 19, 2019, asserting claims for: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; (2) Federal Unfair Competition, 15 U.S.C. § 1125(a); (3) Unfair and Deceptive Trade Practices under Michigan State Law; and, (4) Declaratory Relief under 28 U.S.C. § 2201. (ECF No. 1.) After Plaintiff was unsuccessful in its attempts to serve of a copy of the Summons and Complaint on the Defendants (See ECF No. 8, Affidavit of Chris Warren Regarding Non-Service

5

("Warren Aff."), PgID 52-53.),[2] Plaintiff filed a motion for alternate service, which was granted. (ECF Nos. 7, 10.) In accordance with the Court's order, on January 8, 2020, Plaintiff served the Summons and Complaint on Defendants via certified mail, and on January 15, 2020, a copy of the Summons and Complaint was left with an employee at the Defendant restaurant. (ECF Nos. 11-14, Certificates of Service.)

Defendant Owens stated that he "first learned that a Complaint had been filed in this case on or about January 30, 2020 when [he] looked through a stack of mail that had accumulated on [his] desk." (Owens Decl. ¶ 6, PgID 519.) He states that the complaint "had been delivered to a new employee [at his restaurant] who had simply placed it among the stack of mail in [Owens'] office without alerting [him] to its delivery." (*Id.* ¶ 7, PgID 520.) Owens asserts that he then set about to retain counsel and determine how to finance the defense of this case, and that he subsequently retained Mr. Begin. (*Id.* ¶¶ 8-10.)

On February 11, 2020, after no response to the Complaint had been filed, Plaintiff filed a Request for Clerk's Entry of Default as to both Defendants (ECF No.

---

[2] Plaintiff claims that Defendants "evaded service," as evidenced by the process servers' sworn statement that he attempted service on Defendants at the Big Burgz restaurant three times and was told Mr. Owens was not there, even though the process server believed he saw Defendant Owens on a restaurant camera on his second attempt at service. (ECF No. 31, Plaintiff's Response at pp. 4-5, PgID 530-31, citing Warren Aff.)

15), which was granted as to Defendant Owens on February 12, 2020 (ECF No. 16), and as to Defendant Big Burgz, LLC on February 13, 2020 (ECF No. 17).

According to Defendants, on or about Friday, February 28, 2020, Mr. Begin attempted to contact Plaintiff's counsel and left a telephonic message on Mr. Wais's office phone generally requesting that an extension be permitted to respond to the Complaint. (ECF No. 30, Defs.' Mot. Set Aside at pp. 4-5, PgID 436-37.) Mr. Begin did not receive a response.

Mr. Begin placed another phone call to Mr. Wais the next business day, on Monday, March 2, 2020, again requesting an extension of time to respond to the Complaint. (*Id.* at p. 5, PgID 437.) According to Defendants, Mr. Wais stated that he had not received the prior telephonic message, he refused to agree to an extension of time to respond to the complaint, and he informed Mr. Begin that Plaintiff would be filing a Motion for Default Judgment later that day. (*Id.*)

Plaintiff then filed its Motion for Default Judgment and Permanent Injunction on March 2, 2020. (ECF No. 18, Pl.'s Mot. Def. J.) Plaintiff argues in its motion that Defendants evaded service and have failed to plead or otherwise defend against Plaintiff's Complaint within the allowed time period, and that Plaintiff is entitled to injunctive relief, monetary damages, and attorney fees and costs. (*Id.*)

7

On March 24, 2020, Mr. Begin entered an appearance on behalf of Defendants, and filed a response to the Motion for Default Judgment as well as a Motion to Dismiss Under Rule 12(b)(6). (ECF Nos. 22-24.) Plaintiff filed a reply brief in support of its Motion for Default Judgment and a response to Defendants' Motion to Dismiss (ECF Nos. 25, 26), and Defendants filed a reply in support of their Motion to Dismiss. (ECF No. 27.)

The Court subsequently struck all of Defendants' pleadings as thoroughly violative of the Court's Local Rules, but, given the harsh nature of default judgment and the fact that "trial on the merits are favored in federal courts," the Court permitted Defendants to file a motion to set aside default by May 6, 2020. (ECF No. 28, citing *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).)

On May 6, 2020, Defendants filed a Motion to Set Aside Default Under Rule 55(c). (ECF No. 30, Defs.' Mot. Set Aside.) Plaintiff responded on May 14, 2020, opposing Defendants' motion to set aside the default, and alternatively requesting that the Court condition setting aside the default upon payment of Plaintiff's litigation fees and costs, which Plaintiff alleges were wrongfully incurred as a result of Defendants' delinquencies. (ECF No. 31, Pl.'s Resp.) On May 21, 2020, Defendants filed a reply brief, arguing that it has established the requisite good cause

8

to set aside the default and to avoid default judgment, and that Plaintiff's request for attorney fees and costs should be denied. (ECF No. 32, Defs.' Reply.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a party that has obtained a Clerk's Entry of Default must apply to the Court for a default judgment in all cases other than cases seeking a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(2). Upon entry of a default, all well-pleaded allegations of the complaint regarding liability are accepted as true. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. June 9, 2006).

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides that a court may set aside a final judgment, order or proceeding for certain enumerated reasons including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

The Sixth Circuit has explained that courts must consider the following three factors under both Rules to determine whether good cause exists: (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has any meritorious defenses, and (3) whether the plaintiff will be prejudiced by setting aside the default. *See Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006)

(citation omitted); *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 844 (6th Cir. 1983). Even so, "the standard for applying [the three factors] to a motion to set aside a final judgment under Rule 60(b) is more demanding than their application in the context of a motion to set aside an entry of default under Rule 55(c)." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011). The Sixth Circuit has explained the differences between the Rule 55(c) "good cause" standard and Rule 60(b) standard as follows:

> Once a defendant fails to file a responsive answer, he is in *default,* and an entry of *default* may be made by either the clerk or the judge. A *default judgment* can be entered by the clerk only if a claim is liquidated, or if a claim is unliquidated, by the judge after a hearing on damages. A *default* can be set aside under rule 55(c) for "good cause shown," but a default that has become final as a *judgment* can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders.

*Dassault Systemes*, 663 F.3d at 839 (quoting *Shepard Claims Serv. Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 194 (6th Cir. 1986)) (emphasis in original)). The more stringent Rule 60(b) standard does not apply unless "the court has determined damages and a judgment has been entered." *Dassault Systemes*, 663 F.3d at 839 (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345 (6th Cir. 2003)). Here, there has been neither a final judgment entered nor any money

damages awarded. The Court will therefore evaluate the three factors under the less strict "good cause" standard of Rule 55(c).

"Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default." *Shepard Claims Serv.*, 796 F.2d at 193; *SEC v. Merkilinger*, 489 F. App'x 937, 939 (6th Cir. 2012) (noting that "the district court enjoys considerable latitude to grant a defendant relief from a default entry"). As a general rule, Sixth Circuit decisions on Rule 55(c) motions to set aside default are "extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010) (collecting cases). "Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits," *United Coin*, 705 F.2d at 846, and the Court must "'construe[] all ambiguous or disputed facts in the light most favorable to the defendant[],' resolving any doubts in his favor." *Deasault Systemes*, 663 F.3d at 841 (citing *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)) (alternations in original)).

## III.  ANALYSIS

**A.      Defendants' Motion to Set Aside Default (ECF No. 30)**

Defendants contend that this Court should set aside the Clerk's entries of default because they have not engaged in willful or culpable conduct, they have several meritorious defenses to Plaintiff's claims, and Plaintiff has failed to show sufficient prejudice. (Defs.' Mot. Set Aside at pp. 8-22, PgID 440-54.) Plaintiff argues in response that Defendants have failed to show good cause to set aside the default, and, alternatively, if the Court is inclined to set aside the default, Plaintiff requests that such an order be conditioned upon payment of Plaintiff's attorney fees and costs. (Pl.'s Resp. at pp. 9-22, PgID 535-48.)

The Court starts with the understanding that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases," and that there is a strong preference for deciding cases on the merits rather than by default. *United Coin*, 705 F.2d at 845-46; *Shepard Claims Serv.*, 796 F.2d at 193. With that principle in mind, the Court turns to the three factors to be considered in determining whether to set aside an entry of default.

### 1.  Whether Defendants engaged in willful or culpable conduct

Turning to the first factor that must be considered – whether the default is the result of culpable conduct – a defendant's conduct leading to a default is willful or

culpable if the defendant "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *See Dassault Systemes*, 663 F.3d at 841 (citing *Shepard Claims Serv.*, 796 F.2d at 194). "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *$22,050.00 U.S. Currency*, 595 F.3d at 327.

Defendants argue that nothing in the record suggests that they intended to thwart judicial proceedings, or that they had a reckless disregard for the effect of their conduct on the proceedings. (Defs.' Mot. Set Aside at p. 8, PgID 440.) Defendants explain that they did not know the Complaint had been served because a new employee had placed it in the "mail pile" at the restaurant and it was not discovered by Defendant Owens until two weeks later, on or about January 30, 2020. (*Id.*; Owens Decl. ¶¶ 6-7, PgID 519-20; ECF No. 32-2, Second Declaration of Billy Owens ("Owens Second Decl.") ¶¶ 8-9, PgID 599.) Defendant Owens then retained counsel "later in February 2020, after the Default had already been entered." (Defs.' Mot. Set Aside at p. 8, PgID 440; Owens Decl. ¶¶ 9-10, PgID 520.) Owens now claims that although Mr. Begin sent a courtesy letter on behalf of Defendants to Mr. Wais in November 2019, "while [Owens] considered [Plaintiff's] cease and desist letter," Owens did not "enter into any professional agreement with Mr. Begin in September of 2019," or otherwise retain or pay for his legal services until late-

13

February 2020, after Owens had been served with the Complaint. (Owens Second Decl. ¶¶ 6-7, 12, PgID 598-99.) Defendants' counsel then contacted counsel for Plaintiff, learned that a default had been entered and requested an extension of time, but Plaintiff nevertheless filed the Motion for Default Judgment. Defendant concludes that this factor therefore weighs in favor of vacating the entry of default.

Plaintiff contends in response that Defendants recklessly disregarded the effect of ignoring this lawsuit because they failed to substantively respond to the demand letter, evaded service of the Complaint on three separate occasions, and failed to answer the Complaint subsequently served by alternate service, leading to the defaults currently in place against Defendants. (Pl.'s Resp. at pp. 10-11, PgID 536-37.) Plaintiff argues that Defendant Owens "knew that this lawsuit was imminent" when he was served with the demand letter in September 2019, but simply ignored the matter, and that "inexplicitly failing to open mail or respond to a lawsuit for over two months constitutes culpable conduct." (*Id.* at pp. 12-13, PgID 538-39.)

The Court agrees with Plaintiff's argument that Defendants' counsel and Defendant Owens exhibited culpable conduct. The Court finds that Defendants' explanation for their delayed response is not credible, and that Defendants did exhibit a disregard for the judicial proceedings. "Nevertheless, it is not necessary

14

that conduct be excusable to qualify for relief under the 'good cause' standard of Rule 55(c)." *Shepard Claims Serv.*, 796 F.2d at 194. In light of the Sixth Circuit's direction that "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits," *United Coin*, 705 F.2d at 844-45, the Court concludes that Defendants' behavior does not rise to the level of the "particularly culpable conduct" required to deny Defendants' motion. The Sixth Circuit has instructed that "[w]here the party in default satisfies the [other] two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Shepard Claims Serv.*, 796 F.2d at 195; *cf. Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 293 (6th Cir. 1992) (stating that where "defendants came perilously close to articulating the existence of a meritorious defense … and demonstrating the absence of substantial prejudice to plaintiffs, … it would require particularly culpable conduct by the defendants to outweigh those two factors and tip the balance toward denial of relief."); *Berthelsen v. Kane*, 907 F.2d 617, 622 (6th Cir. 1990) (holding that although the defendant willfully evaded service, the entry of default should be set aside because the plaintiff would not be prejudiced and the defendant had a meritorious defense). As explained *infra*, the Court finds that the

two remaining factors weigh in favor of setting aside the entry of default. Defendants assert that they did not learn that a default had been entered against them until March 2, 2020, and that they responded on March 24, 2020 (although those pleadings were subsequently struck). Given this background, the Court will not deny Defendants' motion to set aside default, but will condition setting aside the default on the payment of monetary sanctions, as discussed *infra.*

## 2.  Whether Plaintiff will be Prejudiced

Next, the Court must consider whether Plaintiff will be prejudiced by setting aside the default. *United Coin*, 705 F.2d at 845. It is Plaintiff's burden, in opposing the motion to set aside the clerk's entry of default, to point to, if not prove, some kind of negative impact resulting from Defendants' failure to timely file an answer, which in turn is something more than delay itself. Every default that has ever been set aside has necessarily embraced some delay in the proceedings. *United Coin*, 705 F.2d at 845. "Nor does increased litigation cost generally support entry of default." *Dassault Systemes*, 663 F.3d at 842. Rather, the  prejudice inquiry focuses on "the future prejudice that will result from reopening the judgment, not prejudice that has already resulted from defendant's conduct." *Id.* (citation omitted). For example, a delay "must result in tangible harm such as loss of evidence, increased difficulties

16

of discovery, or greater opportunity for fraud or collusion." *Id.* (citing *INVST Fin. Grp.*, 815 F.2d at 398).

Defendants contend that there is no prejudice because they have been operating under the present name, BIG BURGZ, since around 2011 and Plaintiff did not question it until 2019, and that "[t]here is no likelihood of loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion in the present case." (Defs.' Mot. Set Aside at p. 21, PgID 28.)

Plaintiff argues that it is prejudiced by Defendants' continued infringement of, and unfair competition with, Plaintiff's trademark, and that it would be prejudiced by being forced to respond to "frivolous pleadings" like the "procedurally violative motions that were ultimately stricken by this Court." (Pl.'s Resp. at pp. 13-14, PgID 539-40.) Plaintiff claims that it "has incurred over ***$13,000*** in attorney fees and litigation costs since Defendants' default." (*Id.* at p. 15, PgID 541 (emphasis in original), citing Ex. C, Pl.'s Fees and Costs, PgID 558-67.)

Delay and increased costs, alone, do not support a denial of setting aside a default. *See Hernandez v. Telelink, LLC*, No. 4:18CV2203, 2019 WL 5086128, at *2 (N.D. Ohio Oct. 10, 2019) ("Neither delay nor increased litigation costs support denial of setting aside default judgment."). Plaintiff does not allege that Defendants' actions have cause a loss of evidence, increased difficulties with discovery, or

17

created greater opportunity for fraud and collusion. Accordingly, the Court finds that this factor weighs in favor of setting aside the entry of default.

### 3. Whether Defendants Have Stated a Meritorious defense

The Court considers, next, whether Defendants have advanced meritorious defenses. *United Coin*, 705 F.2d at 845. "[I]n order to establish a 'meritorious defense,' the defendant must state 'a defense good at law' which is sufficient if it contains 'even a hint of a suggestion which, if proven at trial, would constitute a complete defense.'" *Thompson*, 95 F.3d at 434 (citing *INVST Fin. Grp.*, 815 F.2d at 398-99). The defendant does not have to demonstrate a likelihood of success on the merits; rather, this inquiry focuses on "the determination of whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *See South Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005); *Dassault Systemes*, 663 F.3d at 843. The test, therefore, is "not whether the defendant will win at trial, but rather whether the facts alleged by the defendant would constitute a meritorious defense if true." *In re Park Nursing Ctr., Inc.*, 766 F.2d 261, 264 (6th Cir. 1985). A defense need not be supported by detailed factual allegations to be deemed meritorious. *$22,050.00 U.S. Currency*, 595 F.3d at 326. "Thus, even conclusory assertions may be sufficient to

18

establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843 (citation omitted).

Plaintiff is seeking, through its complaint, to protect its trademark against Defendants' alleged use or infringement. Defendants assert five defenses in their motion to set aside default: (1) failure to state a claim upon which relief can be granted; (2) laches; (3) estoppel; (4) no likelihood of confusion; and (5) inapplicability of statutory damages. (Defs.' Mot. Set Aside at pp. 10-20, PgID 442-52.) Defendants argue that Reg. No. 3,924,358 (the only mark stated in the Complaint and in Plaintiff's Motion for Default Judgment, even though Plaintiff now claims that the correct Reg. No. is 3,957,515) is for the work mark, "BIGG BURGER," only (and <u>not</u> the logo that is on Reg. No. 3,957,515), and is on the Supplemental Register, not the Principal Register, and that "[a] trademark on the Supplemental Register has been determined by the USPTO to lack distinctiveness, a required element of a protectable trademark, but that it may be capable of acquiring distinctiveness." (*Id.* at pp. 11-12, PgID 443-44.) Defendants also note that "[n]o mark on the Supplemental Register is entitled to or can attain incontestability." (*Id.* at p. 13, PgID 20.) Defendants argue that Plaintiff's Complaint therefore fails to state a claim, Plaintiff's claims are subject to estoppel, and there is no likelihood of confusion. (*Id.* at pp. 11-19, PgID 443-52.) Defendants further assert that Plaintiff's

19

claims are barred by laches because Defendants have operated under the name BIG BURGZ for over nine years and Plaintiff has failed to police its trademarks, and that Plaintiff is not entitled to the statutory damages sought in the Complaint because Defendants' mark cannot be considered a counterfeit of Plaintiff's mark. (*Id.* at pp. 16-17, 19-20, PgID 448-49, 451-52.)

Plaintiff admits that it erroneously cited to the wrong mark in its Complaint, and that it should have cited or Reg. No. 3,957,515, but argues that "this does not impact the validity of Plaintiff's claims" because "Plaintiff need only allege facts that it has a federally registered trademark (not facts that establish the trademark is on the primary as opposed to secondary trademark register)." (Pl.'s Resp. at pp. 16-17, PgID 542-43.) Plaintiff also claims that Defendants fail to address Plaintiff's unfair competition and state law claims (*Id.* at pp.17-18, PgID 543-44), but Defendants do include Plaintiff's unfair competition claims in its argument that Plaintiff's mark is descriptive and not inherently distinct. (Defs.' Mot. Set Aside at p. 19, PgID 451; *see also* Defs.' Reply at p. 5 (explaining that "no unfair competition or state common law rights present a viable theory of recovery if the mark is descriptive or lacking distinctiveness").) Plaintiffs fail to address Defendants' purported meritorious defenses of laches and lack of entitlement to statutory damages.

20

The Court finds, on balance, that Defendants' asserted defenses, as detailed in their motion, at least contain "a hint of a suggestion which, if proven at trial, would constitute a complete defense," and that this factor weight in favor of setting aside the entries of default. *Thompson v. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996); *Dassault Systemes*, 663 F.3d at 844 (finding that defendant "raised at least one defense that presents 'some possibility' of a different outcome").

Therefore, considering the factors set forth above and given the preference that exists for deciding cases on the merits, the Court GRANTS Defendants' Motion to Set Aside Default Under Rule 55(c), and sets aside the Clerk's entries of default, subject to the condition discussed below.

## B.    Attorney's Fees and Costs

Plaintiff requests in its Response that if the Court rules to set aside the entry of default, that the Court should condition setting aside the default upon payment of Plaintiff's litigation fees and costs, which Plaintiff alleges have been "wrongfully incurred as a result of Defendants' delinquencies." (Pl.'s Resp. at pp. 1, 18-22, PgID 527, 544-48.) Plaintiff complains that Defendants intentionally evaded service, failed to timely respond to Plaintiff's Complaint, and filed a "slew of procedurally violative pleadings to which Plaintiff had to respond." (*Id.* at p. 19, PgID 545.) This Court agrees. Plaintiff contends that courts in this district, and in other circuits,

21

previously endorsed conditioning the vacatur of a default on the payment of attorney fees. (*Id.* at pp 7-8, 20-22, PgID 533-34, 546-48 (collecting cases).) Plaintiff therefore requests its "attorney fees and litigation costs, which have amassed to over $13,000 due to Defendants' repeated delinquencies." (*Id.* at p. 23, PgID 549.)

In reply, Defendants contend that Plaintiff's demand for legal fees and costs is unreasonable. (Defs.' Reply at p. 6, PgID 594.) Defendants argue that Plaintiff seemingly "fast-tracked" its Motion for Entry of Default Judgment immediately after Mr. Begin's unanswered telephone call to Plaintiff's counsel on February 28, 2020. (*Id.* at pp. 2-3, PgID 590-91.) Defendants assert that "the billing records submitted by Mr. Wais show a flurry of work on February 28, February 29 (a Saturday), and March 2, 2020, [but] at no time did Mr. Wais attempt to return the phone call to Mr. Begin." (*Id.*) Defendants state that "although the Request for Default had been filed on February 11, 2020, Mr. Wais has not shown or provided <u>any</u> billing activity prior to February 28, 2020, specifically with regard to Plaintiff's Motion to Enter Default Judgment." (*Id.* (emphasis in original).) Defendants continue that "[i]t was only after Mr. Begin *again* called Mr. Wais on March 2, 2020, that Mr. Wais informed him that he would <u>not</u> grant an extension to respond, but that a default had been entered and a motion for default judgment would be filed that day." (*Id.* (emphases added).) Defendants argue that Plaintiff made no attempt to mitigate the legal fees and "[t]o

22

require Defendants to pay for attorney fees and costs then, would essentially require Defendants to finance Plaintiff's litigation." (*Id.* at p. 6, PgID 594.)

"Courts have the inherent power to impose reasonable conditions on setting aside an entry of default in order to limit undue prejudice to the opposing party." *OneMD-Louisville PLLC, LLC v. Digital Med., LLC*, No. 3:19-CV-468-CRS, 2020 WL 2461885, at *9 (W.D. Ky. May 12, 2020) (citation omitted) (holding that equity dictates that Defendant reimburse Plaintiffs' costs and attorney's fees directly related to its motion for entry of default and its motion for default judgment as a condition of setting aside the entry of default); *see also Shepard Claims Serv.*, 796 F.2d at 195 (stating that the district court is not precluded "from assessing or determining some appropriate penalty or sanction against the defendant or his counsel for the delay occasioned by [] careless or inexcusable conduct…."). Although the Court concludes that Defendants' conduct does not justify an entry of default, their conduct warrants sanctions, as the Court concludes that Defendants' actions in this case needlessly increased Plaintiff's costs. *See Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2019 WL 1584557, at *1 (E.D. Mich. Apr. 12, 2019) ("The Court, however, conditioned the setting aside of the defaults and default judgment upon the payment of fees and costs and allowed the plaintiff to submit an affidavit outlining the expenses incurred related to these motions."); *see also Winslow v. Kalamazoo Pub.*

*Sch.*, No. 1:07-CV-65, 2007 WL 1701796, at *2 (explaining that a district court "has authority to condition the setting aside of a default upon payment of attorneys' fees and costs under Fed. R. Civ. P. 55(c).") (citations omitted).

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Thus, "there is no requirement ... that district courts identify and justify each disallowed hour." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citing *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). "Nor is there any requirement that district courts announce what hours are permitted for each legal task." *Id.*

The Court will award a significant portion of Plaintiff's claimed attorney fees and costs, instead of the entire amount Plaintiff seeks. *See J&J Sports Prod., Inc. v. Cloud Nine Hookah Lounge, Inc.*, No. 14-12238, 2014 WL 5800100, at *4 (E.D. Mich. Nov. 7, 2014) (conditioning set aside of default on payment of $1,000 in fees to plaintiff's counsel, even though plaintiff sought payment of $2,320 in fees); *see also Prime Rate Premium Finance Corp.*, 2019 WL 1584557, at *1-2, *supra* (conditioning set aside of default on payment to plaintiff of the entire $16,320 in fees

and $475.78 in costs plaintiff requested). Accordingly, the Court hereby conditions setting aside the entries of default on the payment of **$6,000.00 in fees to Plaintiff within twenty-one (21) days of this Opinion and Order**.

### C.    Plaintiff's Motion for Default Judgment and Permanent Injunction (ECF No. 18)

Because the Court grants Defendants' Motion to Set Aside Default Under Rule 55(c), and the February 12 and 13, 2020 entries of default (ECF Nos. 16, 17) are set aside, Plaintiff's motion for default judgment is DENIED AS MOOT.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above:

(1) Defendants' Motion to Set Aside Default Under Rule 55(c) (ECF No. 30) is **GRANTED**;

(2) the Clerk's entries of default (ECF Nos. 16, 17) are **SET ASIDE**, subject to Defendants' payment of **$6,000.00** in fees and costs to Plaintiff within **twenty-one (21) days** of this Opinion and Order; and

(3) Plaintiff's Motion for Default Judgment and Permanent Injunction (ECF No. 18) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants must respond to Plaintiff's Complaint within **fourteen (14) days** of this Order.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: October 28, 2020

26